Ivo MARTINOVIC

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 22, 2005.

Decided Aug. 17, 2005.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge PELLEGRINI.

The Department of Transportation, Bureau of Driver Licensing (Bureau) appeals from an order of the Court of Common Pleas of Cumberland County (trial court) sustaining the statutory appeal of Ivo Martinovic (Licensee) from a one-year license suspension issued by the Department for refusing to submit to chemical testing pursuant to Pennsylvania's Implied Consent Law (Implied Consent Law).[1]

On or about 3:00 a.m. on June 26, 2004, Licensee was arrested for driving under the influence of alcohol. By official notice dated September 6, 2004, the Bureau notified Licensee that his operating privilege was being suspended for a period of one year, effective October 11, 2004, for failing to submit to a chemical test on June 26, 2004 in violation of Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547. On September 27, Licensee appealed that determination to the trial court.

At the *de novo* hearing, counsel for Licensee requested that Licensee's sister translate for Licensee because he spoke Serbo–Croatian and did not speak or understand English. The Bureau then called Officer Timothy Hutcheson (Officer Hutcheson), who testified that on June 26, 2004, he was on duty when he timed Licensee's van traveling 44 mph in a 25 mph zone. Officer Hutcheson testified that after turning on his lights and siren to stop the van, Licensee pulled over and exited the vehicle. After three warnings to get back into the van, Officer Hutcheson drew

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

Joseph D. Caraciolo, Camp Hill, for appellee.

---

1. Pennsylvania's "Implied Consent Law," 75 Pa.C.S. § 1547(b), provides generally that when a licensee is placed under arrest for driving under the influence (DUI) and is asked to submit to a chemical test, a refusal to submit to the test will result in a 12–month license suspension.

his weapon and ordered Licensee back into the car, and Licensee complied.

Officer Hutcheson then asked Licensee for his license, registration, and proof of insurance. Officer Hutcheson stated that Licensee's eyes were red and glassy, that he detected alcohol on Licensee's breath, and in the course of his questioning, Officer Hutcheson noticed that Licensee's "broken English was slurred." (Reproduced Record at 19a). Officer Hutcheson asked Licensee where he was coming from, and Licensee stated that he was fishing down at the river. When asked whether he had been drinking, Licensee said he had not. Officer Hutcheson then asked Licensee to perform standard field sobriety tests, and Licensee agreed. Additionally, Officer Hutcheson testified that he asked where Licensee lived, and Licensee responded that he lived with his sister; he asked Licensee if the address on the license was correct, and Licensee responded "yes"; he asked whether Licensee understood each sobriety test that Officer Hutcheson asked him to perform (by demonstrating each and talking Licensee through each test), and Licensee responded "yes." Officer Hutcheson testified that

Licensee unsatisfactorily performed the field sobriety tests. Officer Hutcheson also administered a pre-arrest breath test,[2] which indicated that Licensee was under the influence of alcohol. Thereafter, Officer Hutcheson arrested Licensee for driving under the influence pursuant to Section 3802(a)(1) of the Vehicle Code, 75 Pa.C.S. § 3802(a)(1).[3] Officer Hutcheson testified that Licensee cooperated with the arrest.

Officer Hutcheson further testified that he took Licensee to the booking center and read him his *O'Connell* warnings.[4] The reading was taped. He testified that he asked Licensee to submit to chemical testing, and Officer Hutcheson testified that Licensee said "yes." As summarized by the trial court, the videotape showed the colloquy between Officer Hutcheson and Licensee as follows:

> While being videotaped, Officer Hutcheson read Implied Consent warnings to [Licensee]. He then said, "Will you submit to a chemical test of your breath. Will you blow into that machine?" [Licensee] looked at the machine. Hutcheson then blew into his hands and said, "blow into that machine—will you do

---

2. Section 1547(k) provides as follows:

 **(k) Prearrest breath test authorized.—**A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, may require that person prior to arrest to submit to a preliminary breath test on a device approved by the Department of Health for this purpose. The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest. The preliminary breath test shall be in addition to any other requirements of this title. No person has any right to expect or demand a preliminary breath test. Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e).
 75 Pa.C.S. § 1547(k).

3. That section provides as follows:

 **(a) General impairment.—**
 ;7b9b000044381;7b9b000044381 (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
 75 Pa.C.S. § 3802(a)(1).

4. *See Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989) (requiring officers requesting chemical testing of licensees arrested for DUI to advise licensees that *Miranda* rights to counsel do not apply under the Implied Consent Law).

that?" [Licensee] shook his head. Hutcheson said, "Will you do that?" [Licensee] shook his head and mumbled something. Hutcheson said, "Will you say it loud—yes—louder—yes—are you going to do it?" [Licensee] mumbled something, blew into his hands, shrugged his shoulders, and mumbled some more. Hutcheson said, "Yes or no." [Licensee] mumbled something that is not decipherable on the videotape. Hutcheson said, "That's a yes." The booking agent agreed.

(Trial Court Opinion at 2).

Officer Hutcheson testified that he and another booking agent explained in English how to take the chemical test and also showed him how to blow into the mouthpiece by demonstrating. Officer Hutcheson then observed Licensee attempt to blow into the mouthpiece three times; each attempt was unsuccessful.

On cross-examination, Officer Hutcheson testified that there is no protocol that he follows if someone suspected of driving under the influence does not speak English, and he reads warnings only in English. He also testified that he does not stop to determine whether the driver understands English, stating that "[i]f I went through the whole thing like I did with [Licensee] and they did not understand, I would ask for an interpreter like I did, but there wasn't one available." (Reproduced Record at 30a). Officer Hutcheson also stated that he knew Licensee knew what the officers were saying and that he asked for an interpreter to "cover all [his] bases." Id. Officer Hutcheson stated that he got the impression that Licensee knew and understood every word he was saying from the vehicle stop to the chemical test.

The Bureau also called Booking Agent Brandon Mitchem (Agent Mitchem), a certified breath test operator. It was Agent Mitchem's understanding that Licensee spoke English and actually taught English in Germany before coming to the United States. Agent Mitchem testified that he gave Licensee three opportunities to perform the breath test, but each opportunity yielded an insufficient amount of air into the machine despite the agent's repeated instructions and physical demonstrations about forming a tight seal around the mouthpiece and blowing continuously into the machine. Agent Mitchem testified that he wrote Licensee up as refusing to submit to the chemical testing based on the three unsuccessful attempts to retrieve a sample.[5]

Licensee presented the testimony of his sister Blanka Zborsky (Zborsky), who testified that both she and her brother were born in Bosnia, Herzegovina. She testified that Licensee attempted to learn to speak English, but he had been unable to do so. She stated that she acts as a translator for him. She also testified that Licensee was an electrician and had a good job in this country but lost it because he did not speak English. Zborsky testified that Licensee now works at a warehouse where he does not need to speak English. She also stated that Licensee was able to obtain a driver's license because he had a translator when he took the test.

Licensee testified through his translator that he is 52 and does not speak English and has never learned to do so, taking lessons in the past but ultimately quitting. He stated that he speaks Serbo–Croatian and spoke some German while in school; he was confused why Agent Mitchem stated that he actually taught English while in

---

**5.** A licensee's failure to provide a sufficient breath to complete a breathalyzer test constitutes a refusal, whether or not licensee made good faith effort to supply sufficient breath. *Com., of Pa., Dept. of Transp. v. Morris,* 153 Pa.Cmwlth. 518, 621 A.2d 1170 (1993).

Germany. He testified that he recalled the arrest for DUI, the officer reading something to him, and taking a breath test. Licensee stated that he did not understand anything the officers were saying to him but he was trying to figure out what they were asking him with to do with his hands. Licensee also clarified that he exited the vehicle at the traffic stop because his window did not work and he opened the door to see what Officer Hutcheson wanted. On cross-examination, Licensee testified that Officer Hutcheson misunderstood him because he was not fishing at 3:00 a.m., and he did not tell the officer that he lived with his sister but wanted to call her. Licensee stated that he drank one or two beers that night and that he understood that he needed to blow into the breathalyzer.

Accepting the testimony of Licensee and Zborsky as credible, and based on the videotape, the trial court held that Licensee met his burden of proving that he did not speak or understand English sufficiently to have possibly understood the *O'Connell* warnings. The trial court reasoned that while Licensee answered "yes" to many questions posed by Officer Hutcheson and Agent Mitchem, it did not matter because he spoke and understood virtually no English. Finally, the trial court found that because Licensee did not understand English, Officer Hutcheson did not adequately warn him that his license would be suspended if he refused to take the test. Accordingly, the trial court sustained Licensee's appeal and reversed the one-year suspension issued by the Department. This appeal followed.[6]

■ The fundamental argument the Department poses is that the trial court erred as a matter of law by holding that Licensee satisfied his burden of proving that his language barrier prevented a knowing and conscious refusal to submit to chemical testing. To issue a one-year suspension of Licensee's operating privilege under Section 1547(b)(1) of the Vehicle Code, the Department has the burden of proving that (1) Licensee was arrested for violating Section 3802 of the Vehicle Code by a police officer who had "reasonable grounds to believe" that Licensee was operating or was in actual physical control of the movement of a vehicle while in violation of Section 3802 (i.e., while driving under the influence); (2) Licensee was asked to submit to a chemical test; (3) Licensee refused to do so; and (4) Licensee was specifically warned that a refusal would result in the suspension of his operating privileges and would result in enhanced penalties if he was later convicted of violating Section 3802(a)(1). Once that burden is met, the licensee has the burden to prove that (1) he was physically incapable of completing the breath test or (2) his refusal was not knowing and conscious. *Department of Transportation, Bureau of Driver Licensing v. Boucher*, 547 Pa. 440, 691 A.2d 450 (1997).

Because Licensee agrees that the Department satisfied its burden, the sole issue is whether Licensee met his burden of proving that his refusal (i.e., his failure to register a sufficient breath sample) was not knowing and conscious. Although some circumstances such as a language barrier might affect a licensee's ability to

6. Our scope of review of a license suspension case under the Implied Consent Law is limited to determining whether necessary findings of the trial court are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Mueller v. Commonwealth, Department of Transportation, Bureau of Driver Licensing,* 657 A.2d 90 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 542 Pa. 637, 665 A.2d 471 (1995). Whether a licensee refuses to submit to chemical testing is a question of law for this Court's review. *Stump v. Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing,* 664 A.2d 1102 (Pa.Cmwlth.1995).

make a knowing and conscious refusal, *see, e.g., Department of Transportation, Bureau of Motor Vehicles v. Kyong Rok Yi,* 128 Pa.Cmwlth. 117, 562 A.2d 1008 (1989) (upholding a finding by the trial court that licensee's inability to understand English prevented a knowing and conscious refusal), most cases hold that a failure to understand English provides no foundation for an argument that the licensee was unable to make a knowing and conscious refusal. *See Balthazar v. Department of Transportation, Bureau of Driver Licensing,* 123 Pa.Cmwlth. 435, 553 A.2d 1053 (1989), *appeal denied,* 525 Pa. 586, 575 A.2d 116 (1990); *Im v. Commonwealth Department of Transportation,* 108 Pa.Cmwlth. 206, 529 A.2d 94 (1987).[7]

 Although the trial court found that Licensee did not speak English sufficiently to have possibly understood the *O'Connell* warnings, whether Licensee understands the *O'Connell* warnings or not is inconsequential. An officer's sole duty is to *inform* motorists of the implied consent warnings; once they have done so, they have satisfied their obligation. *Department of Transportation, Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996). Additionally, and not without significance in this case, officers have no duty to make sure that licensees understand the *O'Connell* warnings or the consequences of refusing a chemical test. As our Superior Court has stated:

> The implied consent law contained in Section 1547 of the Vehicle Code states that "[i]t shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S. § 1547(b)(2). The implied consent law imposes the duty upon the officer only to apprise the motorist of the consequences of a refusal to take the breath test. No where does the law require the officer to make certain that the motorist understands that he could exercise a right to refuse a breathalyzer test[.]

*Commonwealth v. Mordan,* 419 Pa.Super. 214, 615 A.2d 102, 108–09 (1992). It is equally not the officer's duty to enlist the assistance of an interpreter to make sure a motorist understands implied consent warnings. *See, e.g., Commonwealth v. Robinson,* 834 A.2d 1160, 1164 (2003) ("Requiring certified interpreters for every driver who may have difficulty understanding a police officer, whether due to a hearing impairment, *language barrier,* 3534;3534 or learning disability, is not only not required by the implied consent law, it is simply not feasible, particularly in the case of DUI investigations where temporal concerns are paramount.") (emphasis added).

 Second, although the trial court concluded that because Licensee lacked an understanding of the English language, Officer Hutcheson did not adequately warn him that his license would be suspended if he refused the test, Licensee did not "re-

---

7. In *Balthazar,* for example, the licensee's testimony before the trial court consisted of approximately seven pages of transcript;B0022;B0022 without the assistance of interpreters, and there was never any indication in that the licensee had any difficulty comprehending the questions addressed to him. The licensee in that case also responded to officers at the traffic stop in English and even used foul language in English directed toward the officers. Similarly, in *Im,* a motorist failed to show that he was unable to make a knowing and conscious refusal based on a language barrier simply because he did not understand the warnings. The licensee responded to questions in court, unassisted by an interpreter. He also spoke to the arresting officer several times without any problems. In both cases, we held that the language barrier presented in those cases did not prevent the licensees from making knowing and conscious refusals to submit to chemical testing.

fuse" the test in the ordinary sense of the word, such as explicitly saying "no" to a request to submit to chemical testing or saying anything short of "yes, I will take the test." Instead, the refusal in this case is predicated on the fact that Licensee agreed to take the test and attempted three different times to register a breath sample but *failed to do so*, which is deemed a refusal despite the good faith attempts of the licensee. *Supra* note 5. Accordingly, Licensee had the burden of proving that something impeded him from making a knowing and conscious failure to register a proper breath sample. However, Licensee made no attempt to establish that he was unable to complete the test because he did not understand what to do, only that he did not understand English. The record (including the videotape) reveals that Licensee took the breathalyzer test based on the physical demonstrations from Agent Mitchem; and Agent Mitchem physically demonstrated to blow harder into the breathalyzer and make a seal with his lips after each failed attempt. Licensee attempted to follow Agent Mitchem's instructions each time. Based on these facts, Licensee could not have met his burden of proving that his limited understanding of English prevented him from making a knowing and conscious refusal.

In any event, whether Licensee fails to understand English is not automatically outcome determinative. As *Bal-thazar*, *Im*, and *Robinson* demonstrate, simply because Licensee spoke Serbo-Croatian and did not speak English does not mean that he cannot act knowingly and consciously. When motorists are unconscious from drinking, thereby allegedly preventing them from "consciously" refusing the test, we still hold that those motorists "consciously" refused the test absent some other verifiable impediment. *Department of Transportation, Bureau of Traffic Safety v. Potter*, 118 Pa.Cmwlth. 524, 545 A.2d 979 (1988). The same is true for language barriers; when motorists are limited by their understanding of the English language, thereby allegedly preventing them from "knowingly" refusing the test, we still hold that those motorists "knowingly" refused the test absent some other verifiable impediment. *Im*; *Balthazar*. Otherwise, anyone who speaks little to no English can automatically claim that he or she did not understand the *O'Connell* warnings and avoid the consequences of refusing a chemical test, just as anyone who is drunk could automatically claim that he or she was too drunk to understand the *O'Connell* warnings and avoid the consequences of refusing a chemical test.[8]

For these reasons, the order of the trial court is reversed.

Judge SIMPSON concurs in the result only.

---

8. We also note that while the trial court concluded that Licensee spoke virtually no English and that his inability to speak or understand English prevented him from making a knowing and conscious refusal to submit to chemical testing, it is clear that Licensee answered all of Officer Hutcheson's questions regarding the vehicle stop, the sobriety tests, and the chemical testing. Licensee even answered "yes" on many occasions when asked if he understood what he was being told, and he never communicated—verbally or otherwise—to either Officer Hutcheson or Agent Mitchem that he did not understand what they were telling him regarding the chemical test. Moreover, Officer Hutcheson and Agent Mitchem testified that they had no doubt that Licensee understood what they asked of him because of his response to their questions. Most telling of Licensee's understanding of the *O'Connell* warnings and the instructions on giving breath samples is the fact that he actually took the chemical test three different times, albeit ultimately yielding insufficient samples. In short, Licensee understood quite enough to make a knowing and conscious refusal of the chemical test despite his limited understanding of the English language.

## ORDER

AND NOW, this *17th* day of *August,* 2005, the order of the trial court in the above-captioned matter is reversed.