## Stypula v. Dep't of Transportation

*Robert J. Kopacz,* for plaintiff.
*Brandon Reish,* for Commonwealth.

WORTHINGTON, *J.*, March 18, 2011—

## FINDING OF FACT

1. On September 4, 2010, while monitoring westbound traffic on Interstate 80 in Pocono Township, Trooper Mark Conrad of the Pennsylvania State Police witnessed a red Jeep Liberty make three abrupt lane changes and subsequently cut off two vehicles. Trooper Conrad exited his parked position to follow the vehicle.

2. On several occasions, while following the vehicle, Trooper Conrad observed the Jeep Liberty swerve off the right side of the road, crossing the solid white line.

3. As a result of his observations, Trooper Conrad effected a traffic stop. Upon approaching the driver's side window, Trooper Conrad noticed a strong odor of an alcoholic beverage. He also testified that the driver's eyes were bloodshot and that he appeared to be disoriented; the petitioner could not focus as Trooper Conrad was talking to him.

4. Trooper Conrad identified Zbigniew Stypula, the petitioner, as the driver of the vehicle.

5. After determining that the petitioner exhibited signs of intoxication, Trooper Conrad asked him to step outside of his vehicle to perform field sobriety tests. Trooper Conrad testified that after explaining and demonstrating to the petitioner how the one-leg stand and the walk and turn tests were to be performed, the petitioner took and failed both tests.

6. The petitioner consented to a portable breathalyzer test which showed that he had a blood alcohol content of 0.224.

7. The petitioner was placed under arrest for suspicion of driving under the influence of alcohol, in violation of 75 P.S. 3802(a)(1) and was put in Trooper Conrad's vehicle for transportation to Pocono Medical Center for chemical testing.

8. On the way to the hospital, the petitioner was combative. At one point, the petitioner told the trooper that when he was released, he was going to kill Trooper Conrad and his family.

9. At the hospital, prior to entering the phlebotomist's room, Trooper Conrad briefly described the chemical warnings to the petitioner. The petitioner remained silent.

10. In the phlebotomist's room, Trooper Conrad read the Implied Consent Form DL-26 verbatim to the petitioner and requested that he submit to chemical testing. The petitioner stated no and refused to sign the form.

11. Although the petitioner had a Polish accent when he spoke, Trooper Conrad testified that the petitioner seemed to follow his commands and communicate fine from the moment he initially made contact with him. The petitioner never indicated that he did not understand what Trooper Conrad was saying.

12. The petitioner's grandson, Marcin Lubak, testified on his behalf. He stated that although the petitioner's knowledge of the English language is limited, if the petitioner is around someone who is speaking English and doesn't understand what they are saying, he would probably communicate that to them.

13. By letter dated October 1, 2010, the Commonwealth of Pennsylvania Department of Transportation notified the petitioner that his driving privileges were being suspended effective November 5, 2010, for a period of one year as a result of his violation of section 1547(b)(1)(i) of the vehicle code for a refusal of chemical testing.

## DISCUSSION

The Pennsylvania Motor Vehicle Code provides in

pertinent part as follows:

(a) General rule. -- Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543 (b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) Suspension for refusal. --

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i)    Except as set forth in subparagraph (ii), for a period of 12 months.

(2)    It shall be the duty of the police officer to inform the person that:

(i)    the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii)    if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

(e) Refusal admissible in evidence.—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge. 75 Pa.C.S.A. § 1547.

In order to sustain a suspension of operating privileges

under Section 1547 of the code, the Department of Transportation (DOT) must establish that: (1) the licensee was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating a motor vehicle while under the influence of alcohol; (2) the licensee was requested to submit to a chemical test; (3) the licensee refused to submit; and (4) the licensee was warned that refusal would result in a license suspension. *Broadbelt v. Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 640 (Pa. Cmwlth. 2006). In proving whether a licensee refused to submit to chemical testing, DOT has the burden of showing that the licensee was offered a meaningful opportunity to comply with Section 1547 of the code. *Broadbelt* at 640. Once DOT satisfies its burden, the licensee must establish that the refusal was not knowing or conscious or that the licensee physically was unable to take the test. The determination of whether a licensee was able to make a knowing and conscious refusal is a factual one that is to be made by the trial court. Such factual finding must be affirmed so long as sufficient evidence exists in the record to support the finding. *Kollar v. Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing,* 7 A.3d 336, 340 (Pa. Cmwlth. 2010).

Although some circumstances such as a language barrier might affect a licensee's ability to make a knowing and conscious refusal, most cases hold that a failure to understand English provides no foundation for an argument that the licensee was unable to make a knowing and conscious refusal. *Martinovic v. Commonwealth of*

*Pennsylvania, Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34-35 (Pa. Cmwlth. 2005); *Balthazar v. Department of Transportation, Bureau of Driver Licensing*, 553 A.2d 1053 (Pa. Cmwlth. 1989). "... [w]hether Licensee understands the *O'Connell* warnings or not is inconsequential. An officer's sole duty is to *inform* motorists of the implied consent warnings; once they have done so, they have satisfied their obligation. Additionally, and not without significance in this case, officers have no duty to make sure that licensees understand the *O'Connell* warnings or the consequences of refusing a chemical test. *Martinovic* at 35. (emphasis added). As our Superior Court has stated:

> The implied consent law contained in section 1547 of the vehicle code states that "[i]t shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S. § 1547(b)(2). The implied consent law imposes the duty upon the officer only to apprise the motorist of the consequences of a refusal to take the breath test. No where does the law require the officer to make certain that the motorist understands that he could exercise a right to refuse a breathalyzer test[.] *Id.*

In any event, whether a licensee fails to understand English is not automatically outcome determinative; simply because the petitioner spoke Polish and did not speak English does not mean that he cannot act knowingly and consciously. When motorists are unconscious from drinking, thereby allegedly preventing them from

"consciously" refusing the test, we still hold that those motorists "consciously" refused the test absent some other verifiable impediment. *Martinovic* at 36. The same is true for language barriers; when motorists are limited by their understanding of the English language, thereby allegedly preventing them from "knowingly" refusing the test, we still hold that those motorists "knowingly" refused the test absent some other verifiable impediment. Otherwise, anyone who speaks little to no English can automatically claim that he or she did not understand the *O'Connell* warnings and avoid the consequences of refusing a chemical test, just as anyone who is drunk could automatically claim that he or she was too drunk to understand the *O'Connell* warnings and avoid the consequences of refusing a chemical test. *Id.*

Here, the evidence indicates that the petitioner was arrested for a suspected DUI and there were reasonable grounds to believe that he was operating his vehicle while under the influence of alcohol. Trooper Conrad stated that there was a strong odor of an alcoholic beverage in the petitioner's vehicle, his eyes were bloodshot, he could not focus and he was disoriented. After determining that the petitioner exhibited signs of intoxication, Trooper Conrad explained and demonstrated to the petitioner two field sobriety tests to the petitioner: the one-leg stand and the walk and turn. The petitioner failed both tests. The petitioner also consented to a breathalyzer test which showed that he had a blood alcohol content of 0.224 — almost three times the legal limit. As a result of the above, the petitioner was placed under arrest and transported

to Pocono Medical Center for chemical testing. At the hospital, Trooper Conrad both briefly described the chemical warnings to the petitioner and read them to him from the Implied Consent Form verbatim. The petitioner refused to take the test and at no point did he ever indicate that he did not understand what Trooper Conrad was saying or what was going on. From this, we conclude that the respondent has met its burden.

The burden would now shift to the petitioner to show that his refusal was not knowing and conscious. Although we have evidence that the petitioner is a Polish-born citizen, there is evidence that the petitioner can understand the English language. A failure to understand English does not provide the petitioner a foundation for an argument that he was unable to make a knowing and conscious refusal. Throughout the entire incident, from the time the petitioner was stopped for a possible violation of the vehicle code to the verbatim reading of the DL-26 to the petitioner at the hospital, the petitioner never tells Trooper Conrad that he doesn't understand what is being said or what is going on. Like the *Balthazar* case, Trooper Conrad credibly testified that the petitioner seemed to understand his commands and followed them completely without any assistance. Notably, Trooper Conrad testified that on the way to the hospital, the trooper remained silent while the petitioner became combative and did most, if not all, of the talking in English. At one point in the conversation, the petitioner told the trooper that when he was released, he was going to kill Trooper Conrad and his family. It seems he had no trouble using and understanding the English

language at this point.

The petitioner's grandson, Marcin Lubek, even admits that although his grandfather's knowledge of the English language is limited, he would communicate if he did not understand what a person was saying to him. Although limited by his understanding of the English language, the petitioner never presents any other impediments that would render his refusal anything but knowing and conscious. A limited understanding of the English language alone is not enough to sustain his burden.

We find, therefore, that pursuant to Section 1547 of the Vehicle Code, the Commonwealth of Pennsylvania Department of Transportation properly suspended the petitioner's driving privileges for a period of one year for his knowing and conscious refusal of chemical testing.

## CONCLUSIONS OF LAW

1. The petitioner's refusal of chemical testing after being arrested for driving under the influence was knowing and conscious.

2. Section 1547 of the cehicle code expressly authorized the department to suspend the petitioner's driving privileges for a period of one year.

## ORDER

And now, March 18, 2011, the appeal of Zbigniew Stypula from the order of the department of transportation suspending his driving privileges in the Commonwealth of Pennsylvania for a period of one year is denied.