IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Bonanno          :
                        :  No. 1798 C.D. 2016
            v.          :
                        :  Submitted: April 7, 2017
Commonwealth of Pennsylvania,    :
Department of Transportation,    :
Bureau of Driver Licensing,      :
            Appellant   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: September 14, 2017

          The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department of Transportation) appeals from the October 6, 2016 order by the Court of Common Pleas of Beaver County (trial court) sustaining the statutory appeal of Jeremy Bonanno (Bonanno) from a one-year suspension of his operating privilege imposed by the Department of Transportation.

**Background and Procedural History**

          On the evening of December 10, 2015, Bonanno crashed his vehicle into a telephone pole. Officer Charles Galzarano, of the Midland Borough Police Department, responded to the motor vehicle accident. Bonanno informed Officer Galzarano that he had wrecked his car into the telephone pole, but that he was not

injured. After smelling alcohol on Bonanno's breath, Officer Galzarano requested that Bonanno perform field sobriety tests. Upon failing three field sobriety tests, including a nine-step walk and turn, a one-legged stand, and finger dexterity, Bonanno admitted to Officer Galzarano that he had consumed a "couple of drinks." (Reproduced Record "R.R." at 29a-31a.)

Officer Galzarano subsequently arrested Bonanno under suspicion of driving under the influence of alcohol (DUI). Officer Galzarano requested that Bonanno submit to a chemical blood test, and Bonanno refused. Officer Galzarano then brought Bonanno to the Midland Police Station. Officer Galzarano then read the standard Pennsylvania DL-26 Chemical Test Warning Form to Bonanno, which included a request to submit to a blood test, and then provided the form to Bonanno. However, Bonanno refused to sign the form. Officer Galzarano read the form again and requested that Bonanno submit to a chemical blood test. Bonanno again refused. (R.R. at 31a-37a.)

Approximately ten-to-fifteen minutes after Bonanno was brought to the Midland Police Station, his wife arrived to pick him up and Bonanno was released. Bonanno's wife then went back into the police station and informed Officer Galzarano that Bonanno would submit to a blood test, but Officer Galzarano informed her that Bonanno had already refused it. (R.R. at 37a-43a.)

On January 13, 2016, the Department of Transportation suspended Bonanno's driving privileges for a period of twelve months, effective February 17, 2016. His driving privileges were suspended due to Bonanno's violation of 75 Pa.C.S. §1547 of the Pennsylvania Vehicle Code (Vehicle Code), Chemical Test Refusal. (R.R. at 8a-10a.)

2

On January 25, 2016, Bonanno appealed the suspension, alleging that it violated Section 1547 of the Vehicle Code and sought a judicial stay pursuant to Section 1550 of the Vehicle Code. (R.R. at 8a-10a.)

On June 23, 2016, the trial court held a hearing, at which Officer Galzarano and Bonanno both testified as witnesses. (R.R. at 23a-28a.) Officer Galzarano testified that,

> I will say I explained the consequences to him. To be honest with you, I'm not going to, I'm not going to say I totally feel that he understood, to be honest with you. I feel like with his state of mind with being intoxicated and then just being involved in an accident, I do believe that even me explaining to him multiple times he probably didn't understand at that point.

(R.R. at 35a.) Bonanno testified that he did not fully understand the Section 1547 warnings and that his wife went back to the station to tell Officer Galzarano that Bonanno would submit to the blood test but was informed that it was too late. (R.R. at 42a-43a.) The trial court ordered that Bonanno "may file a Memorandum of Law in support of his position" no later than July 1, 2016, and that the Department of Transportation "may file a reply Memorandum within seven (7) days of the receipt of the Memorandum of [Bonanno]." (R.R. at 65a.)

On June 26, 2016, Bonanno filed a memorandum in support of statutory appeal, arguing that he did not fully understand his rights, and that once he understood, he "communicated his desire to submit to the chemical testing." (R.R. at 66a-73a.) Bonanno further argued that his confusion was analogous to *MacDonald v. Department of Transportation, Bureau of Traffic Safety*, 708 A.2d 154, 155-56 (Pa. Cmwlth. 1998), where this Court held that attempting to sign a form that was then taken away demonstrated a willingness to submit to a blood test and that MacDonald was legitimately confused about her rights regarding chemical testing.

3

On July 5, 2016, the Department of Transportation filed a memorandum in support of a one-year license suspension for refusing to submit to a chemical test of blood. (R.R. at 84a-92a.) The Department of Transportation argued that there was no medical evidence that he was unable to take the test or that any "injury contributed to him not understanding the Officer" or any other condition "that would prevent him from understanding what the officer was reading to him." (R.R. at 88a.) The Department of Transportation further argued that, according to this Court's decision in *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013), police officers have no duty to ensure that a licensee understands the consequences of refusing a chemical test, only that an officer must convey to the licensee the consequences of refusing to submit to a chemical test. The Department of Transportation argued that being under the influence of alcohol is not a defense to making a knowing and conscious refusal. Additionally, the Department of Transportation argued that the facts here are distinguishable from *MacDonald* because Bonanno never indicated that he was confused about the warnings. The Department of Transportation further argued that the law required Bonanno to consent, not Bonanno's wife, and that Bonanno himself never consented to the blood test. (R.R. at 87a-90a.)

On July 25, 2016, the Department of Transportation filed a memorandum on why *Birchfield v. North Dakota*, ___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), issued in June 2016 during the pendency of the trial court proceeding, has no impact on civil license suspension. *Birchfield* addressed the legality of blood tests in traffic stops, finding that motorists may not be criminally punished for refusing to submit to a blood test based on legally implied consent to submit to them. *Birchfield,* ___ U.S. ___, 136 S.Ct. at 2185. The Department of

4

Transportation argued that *Birchfield* is not applicable here because the Pennsylvania Supreme Court has held that an operating privilege suspension for a chemical test refusal is permissible and that Pennsylvania's implied consent law is different than the statutes at issue in *Birchfield*. (R.R. at 78a-83a.)

On July 27, 2016, Bonanno filed an amended memorandum in support of statutory appeal conceding that *Birchfield* is not applicable and that the court "should not rely upon it in granting [Bonanno's] appeal of the suspension of his operator's license privilege." (R.R. at 93a-96a.)

On October 6, 2016, the trial court held that the Department of Transportation met its burden under section 1547 of the Vehicle Code and that Bonanno's arguments do not rebut that burden. (Trial court op. at 7). However, the Trial Court found that *Birchfield* was controlling here, despite both Bonanno and the Department of Transportation contending otherwise. (Trial court op. at 8-11.) The trial court found that,

> the escalation of an offense from one that carries no possibility of a jail sentence and a fine of $300.00 to one that allows a maximum of five years in jail and a maximum $10,000.00 fine, due Petitioner's refusal to submit to a blood test, is precisely what the *Birchfield* Court held was unlawful.

*Id.* The trial court also noted that both the *Birchfield* decision and the Department of Transportation's revised DL-26B form were both issued during June 2016 and that the revised DL-26B form eliminated "any language referring to the enhanced criminal penalties previously referenced." *Id.* The Trial Court issued an order sustaining Bonanno's appeal. *Id.* at 12.

On October 27, 2016, the Department of Transportation appealed to this Court.[1]

## Discussion

On appeal, the Department of Transportation argues that there was no merit to Bonanno's argument that he did not understand his rights and that the trial court erred in *sua sponte* raising *Birchfield* and, alternatively, that even if *Birchfield* was properly raised, it "explicitly approved a State's use of civil sanctions." (Brief for Appellant, at 11.)

## Section 1547 of the Vehicle Code

The Department of Transportation argues that the trial court correctly held that there was no merit to Bonanno's argument that he did not understand his rights. More specifically, the Department of Transportation argues that it met its *prima facie* burden of proof under Section 1547 of the Vehicle Code and that *MacDonald* does not apply here because the licensee in *MacDonald* attempted to sign the consent form prior to the officer taking it away. (Brief for Appellant, at 12.)

Section 1547 of the Vehicle Code addresses one-year suspensions of operating privileges, stating that, the Department of Transportation must prove that the party (1) was arrested by a police officer who had reasonable grounds to believe that he was operating or was in actual physical control of the movement of a vehicle while he was committing an offense under 75 Pa.C.S. §3802; (2) was asked to submit

---

[1] Our scope of review is limited to determining whether the trial court committed an error of law, whether the trial court abused its discretion, or whether the findings of facts are supported by competent evidence. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989).

to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his operating or driving privilege and would result in his being subject to the penalties set forth in 75 Pa.C.S. §3804(c) if he were later convicted of violating 75 Pa.C.S. §3802(a)(1). *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005).

Here, as the trial court correctly found, Officer Galzarano arrested Bonanno after Bonanno wrecked his automobile into a telephone pole, failed three field sobriety tests, and admitted to having a couple of alcoholic drinks prior to operating a vehicle. (R.R. at 29a-31a.).

Following Bonanno's arrest, Officer Galzarano asked him three times to submit to a chemical test, and Bonanno refused each time. (R.R. at 31a-37a.) It was only after Bonanno left the Midland Police Station with his wife that his wife returned and said that Bonanno would submit to a chemical test. (R.R. at 37a-43a.) Though Bonanno argued at trial that his wife's request was sufficient, the trial court correctly held that Bonanno refused to submit to a chemical test as a result of his prior refusals and because his wife's request was not clear. *King v. Pennsylvania Department of Transportation, Bureau of Driver Licensing*, 828 A.2d 1, 4 (Pa. Cmwlth. 2002) ("The law is well settled that anything less than a licensee's unqualified, unequivocal assent to submit to chemical testing constitutes a refusal.… [A] refusal to take the test is not vitiated by a subsequent request to take the test, even if this subsequent request was made within a few minutes of the refusal.").

Further, the trial court correctly found that Bonanno was warned that his refusal to submit to chemical testing could result in the suspension of his operating privileges. Although Bonanno argued at trial that he was confused,

> [a]n officer's sole duty is to inform motorists of the
> implied consent warnings; once they have done so, they

7

> have satisfied their obligation. Additionally, and not without significance in this case, officers have no duty to make sure that licensees understand the *O'Connell* warnings or the consequences of refusing a chemical test.

*Martinovic*, 881 A.2d at 35.

At trial, Bonanno argued that he was confused, citing *MacDonald*, 708 A.2d at 154-56. In *MacDonald*, the licensee was arrested under suspicion of a DUI and was presented with a form with chemical test refusal warnings. The licensee asked several questions regarding her rights and attempted to sign the form, but the officer took it away. *Id.* This Court held that, "it is not a refusal . . . when a licensee delays a decision because of confusion as to his or her rights and then assents to submit to a chemical test when those rights are made clear." *Id.*

As the trial court correctly held, this case is distinguishable from *MacDonald* because here Bonanno neither delayed nor asked questions regarding his rights, but instead, he explicitly refused to submit to a chemical test. Therefore, the trial court correctly found that the Department of Transportation met its burden to support a one-year suspension of operating privileges under 75 Pa.C.S. §1547.

**Application of *Birchfield***

The Department of Transportation next contends that the trial court erred in *sua sponte* raising *Birchfield* and rendering the decision based solely on the issue that the court raised. More specifically, the Department of Transportation argues that the trial court's scope of review was limited to the "issues raised by the parties themselves" and that here neither the Department of Transportation nor Bonanno raised the effect of *Birchfield* on appeal. (Brief for Appellant, at 19-20.) Further, the Department of Transportation notes that Bonanno explicitly stated that *Birchfield* did not apply to his appeal. (R.R. at 94a.)

8

A trial court errs when it introduces theories not raised by the parties. *Hrivnak v. Perrone*, 372 A.2d 730, 730-34 (Pa. 1977) (The trial judge erred by *sua sponte* providing "the jury with a ground for recovery which was neither solicited nor urged by the moving party, and which was in fact steadfastly resisted by the moving party throughout the entire proceeding"); *see also Snider v. Thornburgh,* 436 A.2d 593, 601 n. 8 (Pa. 1981) (A court must confine its consideration to the issues presented by the parties); *Department of Transportation, Bureau of Driver Licensing v. Harrington*, 784 A.2d 871, 874 (Pa. Cmwlth. 2001) (A trial court commits reversible error when it raises an issue *sua sponte* and then decides a case based on that issue); *Department of Transportation, Bureau of Traffic Safety v. Reott*, 424 A.2d 991, 992 (Pa. Cmwlth. 1981) ("A trial court errs when it rules on an issue not presented to it, because an issue not raised is deemed waived").

Here, neither the Department of Transportation nor Bonanno raised the applicability of *Birchfield*. Further, Bonanno explicitly denied any applicability of *Birchfield* to his appeal, stating that, "Plaintiff concedes that, as applied to the instant case, *Birchfield vs. North Dakota,*[___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016)], is not applicable, and that this Honorable Court should not rely upon it in granting Plaintiff's appeal of the suspension of his operator's license privilege." (R.R. at 94a.) Given that neither party raised the applicability of *Birchfield* and that Bonanno explicitly rejected *Birchfield*, we find that the trial court erred in deciding this case on the basis of the holding in *Birchfield*.

However, even if the trial court was proper in raising *Birchfield*, this Court recently held that, "*Birchfield* does not apply to implied consent laws that merely impose civil penalties." *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10, 21 (Pa. Cmwlth.), *appeal denied*, ___ A.3d ___ (Pa.,

9

No. 210 MAL 2017, filed August 22, 2017). In *Boseman*, a licensee had her operating privileges suspended under 75 Pa. C.S. § 1547(b)(1)(i) for refusing to submit to a chemical test after being arrested on suspicion of a DUI. *Id.* at 12. This Court reasoned that *Birchfield*, by its own language, limited its holding to criminal prosecutions for refusing a warrantless blood test following an arrest for a DUI by stating that "[p]etitioners do not question the constitutionality of those [civil] laws, and nothing we say here should be read to cast doubt on them." *Id.* at 21 (quoting *Birchfield*, ___ U.S. ___, 136 S.Ct. at 2185). This Court held that *Birchfield* did not apply to civil suspensions of operating privileges and granted the Department of Transportation's request to re-instate Boseman's one-year suspension. *Id.* at 21-22. Therefore, as in *Boseman*, the trial court here improperly applied *Birchfield* to a civil suspension of operating privileges.[2]

Accordingly, the order of the trial court is reversed. The Department of Transportation is directed to re-instate the one-year suspension of Bonanno's operating privilege.

PATRICIA A. McCULLOUGH, Judge

---

[2] *But see Gray v. Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing*, (Pa. Cmwlth., Nos. 1759 and 1760 C.D. 2016, filed June 9, 2017), 2017 WL 2536439 (McCullough, J., concurring) (noting disagreement with application *Birchfield*).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Bonanno            :
                              :   No. 1798 C.D. 2016
            v.            :
                              :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
            Appellant    :

## *__ORDER__*

AND NOW, this 14th day of September, 2017, the order of the Court of Common Pleas of Beaver County Pennsylvania, dated October 6, 2016, is hereby reversed. The Department of Transportation, Bureau of Driver Licensing, is hereby directed to reinstate the one-year suspension of the operating privilege of Jeremy Bonanno.

_____
PATRICIA A. McCULLOUGH, Judge

Jeremy Bonanno                    :
                                        :
         v.                     :
                                          :
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing,      :   No. 1798 C.D. 2016
              Appellant      :   Submitted: April 7, 2017

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE              FILED: September 14, 2017

      The Majority's focus on the minor factual differences between this case and those in *MacDonald v. Department of Transportation, Bureau of Driver Licensing*, 708 A.2d 154 (Pa. Cmwlth. 1998) is misplaced. Our underlying reasoning behind *MacDonald* is equally as applicable here: confusion surrounding the request to submit to a blood test does not constitute refusal. By the arresting officer's own testimony, he was unsure as to whether Jeremy Bonanno (Licensee) understood the warning that refusal would result in suspension of operating privileges: "I feel like with his state of mind with being intoxicated **and then just being involved in an accident**, I do believe that even me explaining to him multiple times **he probably didn't understand** at that point." (Reproduced Record (R.R.) at 35a.; *see also Majority*, slip op. at 3 (emphasis added).) Whatever the cause of Licensee's confusion, whether intoxication, or "just being

involved in an accident," or both, it is clear that even the arresting officer was unsure of what was being conveyed to Licensee when the request for submission was made. (R.R. at 35a.) Under these circumstances, it cannot be said with any certainty that the officer adequately informed Licensee as required by law. Coupled with Licensee's ultimate consent to submit, as conveyed by his wife to the officer, the trial court's decision should be upheld. As such, I must dissent.


_____
JOSEPH M. COSGROVE, Judge

JMC-2