# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eduardo Coriano,                          :
                          Appellant       :
                                          :
          v.                              :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :   No. 1163 C.D. 2018
Bureau of Driver Licensing                :   Submitted: January 25, 2019


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED:  June 27, 2019


          Eduardo Coriano (Licensee) appeals from the July 19, 2018 order of
the Court of Common Pleas of Clinton County (trial court) denying his statutory
appeal from a 12-month driver's license suspension imposed by the Pennsylvania
Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to the
Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law),
as a result of Licensee's refusal to submit to chemical testing upon his arrest for
driving under the influence of alcohol or a controlled substance (DUI).[1]  Upon
review, we affirm.

_____

[1] 75 Pa. C.S. § 3802.

On the evening of March 18, 2018, Pennsylvania State Trooper David Braniff received a report of a vehicle speeding and driving erratically on Interstate 80 near State College, Pennsylvania. Notes of Testimony July 12, 2018 (N.T.) at 6-7. Trooper Braniff located the vehicle in question and observed it travelling up to 20 miles per hour over the 70 mile-per-hour speed limit while weaving across the highway's center and fog lines multiple times. N.T. at 7. Trooper Braniff engaged his emergency lights to initiate the stop. *Id.* at 8. Licensee, the driver and sole occupant of the vehicle, continued for approximately one mile and crossed the highway centerline again before stopping. *Id.*

Upon approaching Licensee's vehicle, Trooper Braniff requested Licensee's driver's license, which Licensee provided without hesitation. N.T. at 8 & 14. Trooper Braniff immediately smelled a strong odor of alcohol emanating from Licensee's vehicle and further noticed that Licensee's speech was slow and sluggish. *Id.* at 9. As a result of these observations, Trooper Braniff asked Licensee to get out of the vehicle to perform field sobriety tests. *Id.* at 9. Trooper Braniff attempted to conduct the field sobriety test, but abandoned the attempt when Licensee claimed not to understand the testing directions. *Id.* at 10. Instead, Trooper Braniff conducted a preliminary breath test (PBT), which indicated that Licensee was driving with a blood alcohol level well above the legal limit.[2] *Id.* Based on the PBT result and his observations, Trooper Braniff placed Licensee under arrest for DUI. *Id.*

Trooper Braniff transported Licensee to the emergency room of a local hospital for chemical testing. N.T. at 11. There, Trooper Braniff read Licensee

---

[2] The PBT indicated Licensee's blood alcohol level was 0.232%, nearly three times the legal limit of 0.08%. N.T. at 10.

DOT's DL-26B form[3] in its entirety, verbatim. *Id.* at 11-12, 15-18. After Trooper Braniff read the warnings, Licensee told the trooper that he understood and that he would like to refuse the blood testing. *Id.* at 13 & 15-18. Trooper Braniff and Licensee both signed the DL-26B form indicating that Trooper Braniff read the warnings and that Licensee refused to submit to the requested blood testing. *Id.* at 12-13; DL-26B Form, R.R. at 40.

On April 6, 2018, DOT mailed Licensee a letter notifying him that, as a result of his refusal to submit to chemical testing on March 18, 2018, his license would be suspended pursuant to the Implied Consent Law for 12 months, effective

---

[3] DOT's DL-26B form is titled "Chemical Test Warnings and Report of Refusal to Submit to a Blood Test As Authorized By Section 1547 of the Vehicle Code In Violation of Section 3802 (relating to driving under the influence of Alcohol or Controlled Substance)." *See* License Suspension Appeal Hearing Exhibit #1, DL-26B form (DL-26B form); Reproduced Record (R.R.) at 40. The DL-26B form warnings are as follows:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B form; R.R. at 40.

May 11, 2018. *See* License Suspension Letter dated April 6, 2018, R.R. at 37-39. Licensee appealed and the trial court conducted a hearing on Licensee's license suspension appeal on July 12, 2018. *See* N.T. July 12, 2018. On July 19, 2018, following the hearing and briefing by the parties, the trial court entered its order denying Licensee's appeal. *See* Trial Court Order dated July 19, 2018. On August 17, 2018, Licensee filed a timely notice of appeal to this Court.[4]

Licensee raises two claims in this appeal. First, Licensee claims that, due to Licensee's limited grasp of the English language, the trial court erred by determining that Trooper Braniff provided adequate warnings regarding the consequences of refusing chemical testing. *See* Licensee's Brief at 6. Second, Licensee argues that Trooper Braniff's failure to sign a certain portion of the DL-26B form rendered the warnings inadequate. *Id.*

Licensee first argues that the trial court erred in holding that Trooper Braniff adequately warned Licensee of the consequences of refusing to submit to blood testing. *See* Licensee's Brief at 14-15. We disagree.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making

---

[4] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

4

> a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). In the instant matter, Licensee does not challenge that he was driving the vehicle, that police had probable cause to arrest him, or that the police requested that he submit to chemical testing. *See* Licensee's Brief at 11. Instead, Licensee challenges the voluntariness of his refusal and whether he was adequately informed of the consequences of his refusal. *Id.*

Pennsylvania's courts have already determined that the DL-26B warnings represent adequate warnings of the current consequences of refusal to submit to chemical testing. *See Black v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 251 C.D. 2018, filed Jan. 4, 2019),[5] slip op. at 5-10 (discussing implications of *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), and subsequent Pennsylvania appellate cases in reference to DOT's revised DL-26B form); *see also Commonwealth v. Giron*, 155 A.3d 635 (Pa. Super. 2017); *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016); 75 Pa. C.S. § 1547. Therefore, Licensee's claim to the contrary is without merit.

The remainder of Licensee's issue concerns whether he met his burden of establishing that his language barrier prevented him from providing a knowing and conscious refusal to submit to chemical testing. We find that the trial court committed no error of law or abuse of discretion in determining that Licensee did not meet this burden.

---

[5] Pursuant to Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

This Court has explained that

> [t]he determination of whether a licensee was able to make a knowing and conscious refusal is a factual one that is to be made by the trial court. Such factual finding must be affirmed so long as sufficient evidence exists in the record to support the finding.

*Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 340 (Pa. Cmwlth. 2010) (internal citation omitted). Generally, "a failure to understand English provides no foundation for an argument that the licensee was unable to make a knowing and conscious refusal." *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 35 (Pa. Cmwlth. 2005). "[W]hether [a licensee] fails to understand English is not automatically outcome determinative." *Id.* at 36. As this Court has explained:

> When motorists are unconscious from drinking, thereby allegedly preventing them from "consciously" refusing the test, we still hold that those motorists "consciously" refused the test absent some other verifiable impediment. The same is true for language barriers; when motorists are limited by their understanding of the English language, thereby allegedly preventing them from "knowingly" refusing the test, we still hold that those motorists "knowingly" refused the test absent some other verifiable impediment. Otherwise, anyone who speaks little to no English can automatically claim that he or she did not understand the [] warnings and avoid the consequences of refusing a chemical test, just as anyone who is drunk could automatically claim that he or she was too drunk to understand the [] warnings and avoid the consequences of refusing a chemical test.

6

*Id.* "Additionally, . . . [police] officers have no duty to make sure that licensees understand the [] warnings or the consequences of refusing a chemical test." *Id.* at 35. Likewise, police have no duty to provide an interpreter to ensure a motorist understands the implied consent warnings. *Id.* Also, "[a] driver's self-serving testimony that she was incapable of providing a knowing and conscious refusal of chemical testing is insufficient to meet the licensee's burden of proof." *Kollar*, 7 A.3d at 340.

Of course, as fact-finder in license suspension appeals, the trial court determines both the credibility of witnesses and weight assigned to the evidence presented. *Park v. Dep't of Trans., Bureau of Driver Licensing*, 178 A.3d 274, 284 (Pa. Cmwlth. 2018). "It is well settled that the trial court's credibility determinations in a license suspension appeal will not be second-guessed on appeal." *Id.*

Here, Trooper Braniff testified at Licensee's suspension appeal hearing that Licensee communicated well enough to understand the trooper's requests that Licensee produce his driver's license and alight from the vehicle. *See* N.T. at 10. While Trooper Braniff stopped the field sobriety testing when Licensee claimed he could not understand the trooper's directions, Trooper Braniff was able to successfully administer a PBT. *Id.* Trooper Braniff testified that, at the hospital, he read the DL-26B form to Licensee verbatim. *Id.* at 11-12, 15-18. Trooper Braniff explained that, after he read the warnings, Licensee told the trooper in English that he understood and that he would like to refuse the blood testing. *Id.* at 13 & 15-18. Trooper Braniff also testified that, because Licensee had previously said he did not understand the field sobriety test instructions, after reading the DL-26B form, Trooper Braniff asked Licensee a second time whether he understood the DL-26B warnings and if he would still like to refuse, to which Licensee again indicated that

7

he wanted to refuse. *Id.* at 13, 16 & 18-19. Additionally, Trooper Braniff testified that, after Licensee stated he understood, both he and Licensee signed the DL-26B form indicating that Trooper Braniff read the warnings and that Licensee refused to submit to the requested blood testing, which form was entered into evidence. *Id.* at 12-13 & 15; DL-26B Form, R.R. at 40. The trial court found Trooper Braniff's testimony to be credible. *See* Trial Court Opinion and Order dated July 19, 2018 (Trial Court Opinion) at 6 (pagination supplied).

Licensee testified through an interpreter at the license suspension appeal hearing. *See* N.T. at 21-28. Licensee testified that he understands a little bit of English, but that he is not fluent and cannot have a conversation in English. *Id.* at 28. Licensee further explained that he is a 56-year-old United States citizen from Puerto Rico, where he grew up and attended school, which was conducted in Spanish, through the tenth grade. N.T. at 21. Licensee testified that he moved to the United States when he was 39 years old and since that time has engaged in occupations that did not require him to be able to speak English. *Id.* at 22-24. Licensee explained that his son lives with him, speaks English fluently, and translates important documents for Licensee at home because he would not otherwise understand the documents.[6] *Id.* at 24.

Regarding the DL-26B form, Licensee testified that he recalled the trooper reading the form but that, due to his difficulties with English, he did not understand what was read. N.T. at 25. Licensee further testified that, if Trooper Braniff explained to him about the consequences of refusing the blood testing, he did not understand and would instead have simply nodded and smiled to comply. *Id.* Licensee testified that he did not understand that if he refused the blood testing at

---

[6] Licensee also explained that he holds a commercial driver's license, but that the test he took to attain the license was in Spanish. *See* N.T. at 24.

8

the hospital, then his driver's license would be suspended for a year. *Id.* at 26. Further, Licensee testified that he would not have refused had he known that his license would be suspended for a year. *Id.* Licensee conceded that he was intoxicated on March 18, 2018. *Id.* at 27.

Based on this evidence, the trial court made the following relevant findings:

16. The Licensee responded to Trooper Braniff's directive to exit the vehicle for the purpose of performing standardized field sobriety tests.

17. The Licensee produced his driver's license when he was requested to do so.

18. The Licensee exited his vehicle when he was requested to do so.

. . . .

25. The Licensee entered the emergency room where Trooper Braniff presented the Licensee with the DL-26B Form, which was entered as Commonwealth's Exhibit #1, along with all sub-exhibits.

26. The DL-26B Form bears the signature of the Licensee confirming that he had been advised of the warnings as well as the signature of the Trooper Braniff confirming that all of the information on the DL-26B Form is correct and that the operator did refuse the test.

27. Immediately following Trooper Braniff reading the DL-26B Form verbatim to the Licensee, the Licensee related to Trooper Braniff that he would like to "refuse the test."

28. Trooper Braniff followed up by asking the Licensee if he understood the [DL-26B] Form in its entirety and if he would still like to refuse and the Licensee indicated that he would "like to refuse."

Trial Court Opinion at 2-4. Based on its findings, the trial court concluded that Trooper Braniff gave Licensee the DL-26B warnings and that Licensee "made a knowing and conscious refusal of the requested blood test." *Id.* at 6. The trial court explained that it was "satisfied that the Licensee responded appropriately to the Trooper's instructions with respect to producing his license, exiting the vehicle and confirming that he understood the DL-26B form (confirmed by his execution of the same) well enough to make a knowing and conscious refusal of the blood test." *Id.*

We find no abuse of discretion in the trial court's determination that Licensee knowingly refused to consent to the requested chemical testing. Trooper Braniff explained that he read the DL-26B form to Licensee verbatim and that Licensee told him, in English, that he wanted to refuse the testing. Trooper Braniff, concerned about Licensee's previous statement that he did not understand English, then again asked Licensee whether he understood the warnings and wanted to refuse. Licensee again indicated, in English, that he wanted to refuse. The DL-26B form entered into evidence corroborated Trooper Braniff's testimony and further supported the trial court's finding that Licensee knowingly and consciously refused the requested chemical testing. Licensee's self-serving testimony regarding his limited understanding of the English language is insufficient to meet his burden of proving that he was incapable of providing a knowing and conscious refusal of chemical testing. *See Kollar*. To the extent Licensee invites this Court to otherwise reweigh the evidence presented at the license suspension appeal hearing to overturn the trial court's conclusions, we decline Licensee's invitation. *See Park*.

10

Further, we find unconvincing Licensee's claim that the trial court erred in crediting the DL-26B form because Trooper Braniff signed on an incorrect line. *See* Licensee's Brief at 11-14. We note that the trooper did, in fact, sign the DL-26B form, not once, but two times: once on the "Signature of Officer" line below the words "Operator refused to sign, after being advised," and once on the signature line in the Affidavit section of the form. *See* DL-26B Form; R.R. at 40. In explaining why he signed on the signature line below the words "Operator refused to sign, after being advised" line as opposed to the arguably more appropriate signature line four lines up and directly below the "I certify that I have READ the above warnings to the operator regarding the suspension of his/her operating privilege and gave the operator an opportunity to submit to blood test" signature line, Trooper Braniff testified simply that he did not remember why he affixed that signature where he did. *See* N.T. at 19. The trial court accepted this testimony as credible, and we will not second guess that determination here on appeal. *See* Trial Court Opinion at 6; *Park*. Additionally, Licensee offers no legal support for the suggestion that Trooper Braniff's misplaced signature somehow invalidated the signed DL-26B form. *See* Licensee's Brief at 11-14. This claim fails.

For the above reasons, the trial court properly denied Licensee's statutory license suspension appeal. Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eduardo Coriano,                    :
                Appellant       :
                                   :
          v.                      :
                                   :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :    No. 1163 C.D. 2018
Bureau of Driver Licensing       :

# O R D E R

        AND NOW, this 27th day of June, 2019, the July 19, 2018 order of the Court of Common Pleas of Clinton County is AFFIRMED.


                               _____
                               CHRISTINE FIZZANO CANNON, Judge